GREENBERG TRAURIG, LLP
NINA D. BOYAJIAN (SBN 246415)
*BoyajianN@gtlaw.com*
REBEKAH S. GUYON (SBN 291037)
*GuyonR@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Telephone: 310-586-7700
Facsimile: 310-586-7800

Attorneys for Defendant Retreaver, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| ACQUISITION MANAGEMENT, INC., <br><br> Plaintiff, <br><br> vs. <br><br> RETREAVER, INC., and DOES 1-5, inclusive, <br><br> Defendants. | CASE NO.: 2:19-cv-06814-DSF-KS <br><br> **DEFENDANT RETREAVER, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(2) AND 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> [*Declaration of Jason Kolesnikowicz; Declaration of Stan Pavlovsky; Request for Judicial Notice; Proposed Order filed concurrently*] <br><br> Hearing Date:  December 30, 2019 <br> Time:  1:30 p.m. <br> Room:  Courtroom 7D <br><br> Hon. Dale S. Fischer <br><br> Action Filed:  August 6, 2019 <br> FAC Filed:  November 11, 2019 |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 30, 2019, at 1:30 p.m., in Courtroom 7D of the above-captioned Court, located at 350 West 1st Street, Los Angeles, California, Defendant Retreaver, Inc. ("Retreaver") will and hereby does respectfully move for an order dismissing Plaintiff Acquisition Management, Inc.'s ("Acquisition") First Amended Complaint ("FAC") in its entirety pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

First, Retreaver moves to dismiss Acquisition's FAC for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) because Retreaver is not domiciled in California, its principal place of business is in Canada, and Retreaver did not purposefully direct the activities out of which Acquisition's claim arises into California. In the alternative, Retreaver moves to dismiss Acquisition's FAC for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) because: (1) any uses by Retreaver of Acquisition's alleged trademarks (which use ceased months ago) were nominative fair use, and Acquisition, therefore, has not stated a claim in Counts 1-5 for trademark infringement, false designation of origin, trademark dilution, or unfair competition; and (2) Acquisition has not stated a claim for defamation in Count 6 because (a) Retreaver's comments to a customer regarding Acquisition are protected by the common interest privilege in Cal. Civ. Code § 47(c), and (b) the statements that Acquisition complains about are not defamatory as a matter of law.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, all pleadings and files in this matter, the Declaration of Jason Kolesnikowicz and exhibits thereto, the Declaration of Stan Pavlovsky, Retreaver's Request for Judicial Notice, and upon such other and further oral or documentary evidence as may be presented to the Court at or prior to the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to Central District of California Local Rule 7-3. Counsel for the parties met and conferred to discuss the

substance of Retreaver's motion on November 25, 2019. Counsel for Acquisition indicated that he would oppose the Motion.

Dated:  December 2, 2019                Respectfully submitted,

                                        GREENBERG TRAURIG, LLP


                                        By:  */s/ Nina D. Boyajian*
                                              Nina D. Boyajian
                                              Rebekah S. Guyon
                                        Attorneys for Defendant Retreaver, Inc.

# **TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................... 1

II.   FACTUAL ALLEGATIONS..................................................................... 2

    A.    Facts Relevant To The Court's Lack Of Personal Jurisdiction Over Retreaver.......................................................................................... 2

    B.    Facts Relevant To Retreaver's Nominative Fair Use Of "Ringba".................. 3

    C.    Facts Relevant To Acquisition's Defamation Claim......................... 5

        1.    DNC.com's Opinion Regarding Integration With Ringba..................... 6

        2.    Acquisition's Website CallAnalyticsSoftware.com Has "Fake Reviews" ................................................................... 7

        3.    Ringba Was "Banned" From Retreaver For A "Racketeering Scheme" ..................................................... 7

        4.    An "FTC Complaint" ......................................................... 8

III.  ARGUMENT ........................................................................................... 9

    A.    The Court Lacks Personal Jurisdiction Over Retreaver ...................... 9

        1.    Standard For Ruling On A Rule 12(b)(2) Motion To Dismiss ............... 9

        2.    Retreaver Is Not Subject To General Jurisdiction In California .......... 10

        3.    Retreaver Is Not Subject To Specific Jurisdiction In California.......... 11

    B.    Acquisition Has Failed To State A Plausible Claim ........................ 15

        1.    Standard For Ruling On A Rule 12(b)(6) Motion To Dismiss ............. 15

        2.    Any Use Of Acquisition's Alleged Marks Was Nominative Fair Use.................................................................. 15

        3.    Retreaver's Statements To HPJ Holdings Are Common-Interest Privileged........................................................ 19

        4.    Retreaver's Statements Are Not Defamatory ........................ 20

            a.    DNC.com Is Not Integrated With Ringba, And Its Opinion On Ringba Is Protected.............................. 21

            b.    Whether CallAnalyticsSoftware.com Is "Fake Reviews" Is Nonactionable Opinion................................ 22

            c.    That Retreaver "Banned" Acquisition Is Opinion Or Substantially True................................ 23

            d.    There Is An "FTC Complaint" Involving Acquisition's Owner................................................... 25

IV.   CONCLUSION...................................................................................... 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Applied Underwriters, Inc. v. Lichtenegger*,
   913 F.3d 884 (9th Cir. 2019) .......................................................................... 16, 17, 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................. 15

*AT&T Co. v. Compagnie Bruxelles Lambert*,
   94 F.3d 586 (9th Cir. 1996) ....................................................................................... 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................. 15

*Bragg Live Foods, Inc. v. Eco Action SDN BHD*,
   No. CV158261DSFJPRX, 2016 WL 7446915 (C.D. Cal. Apr. 29, 2016)............. 13, 14

*Cairns v. Franklin Mint Co.*,
   292 F.3d 1139 (9th Cir. 2002) ........................................................................... 15, 18

*Chan v. Soc'y Expeditions, Inc.*,
   39 F.3d 1398 (9th Cir. 1994) ..................................................................................... 9

*Cybersell, Inc. v. Cybersell, Inc.*,
   130 F.3d 414 (9th Cir. 1997) ................................................................................... 14

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)............................................................................................ 10, 11

*Dole Food Co., Inc. v. Watts*,
   303 F.3d 1104 (9th Cir. 2002) ................................................................................. 14

*Erickson v. Pardus*,
   551 U.S. 89 (2007)................................................................................................... 15

*Etaliq, Inc. v. Cisco Sys., Inc.*,
   No. CV113672GAFFFMX, 2011 WL 13220445 (C.D. Cal. July 20, 2011) ............... 14

*Gardner v. Martino*,
   563 F.3d 981 (9th Cir. 2009) ............................................................................. 22, 24

*Greenbelt Coop. Publ'g Ass'n v. Bresler*,
   398 U.S. 6 (1970)..................................................................................................... 23

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984)....................................................................................... 9, 10, 12

*Imageline, Inc. v. Hendricks*,
    No. CV 09-1870 DSF AGRX, 2009 WL 10286181 (C.D. Cal. Aug. 12, 2009) ........................................................................................ 14, 15

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945).................................................................... 9, 14

*Kaplan v. Intl. Data Grp., Inc.*,
    No. CV 15-406 DSF (MANX), 2015 WL 12806463 (C.D. Cal. Mar. 17, 2015) ............................................................................................ 14

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ............................................... 20, 21

*Martinez v. Aero Caribbean*,
    764 F.3d 1062 (9th Cir. 2014) ............................................... 10, 11

*Marvix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011) ........................................ 10, 11, 12

*Masson v. New Yorker Magazine, Inc.*,
    501 U.S. 496 (1996)........................................................ 20, 23, 25

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990)................................................................... 20, 21

*New Kids on the Block v. News Am. Pub., Inc.*,
    971 F.2d 302 (9th Cir. 1992) .......................... 2, 15, 16, 17, 18

*New Name, Inc. v. The Walt Disney Co.*,
    No. CV 07-5034 PA(RZX), 2008 WL 5587486 (C.D. Cal. July 25, 2008)................. 15

*Ochoa v. J. B. Martin & Sons Farms, Inc.*,
    287 F.3d 1182 (9th Cir. 2002) ...................................................... 12

*Old Dominion Branch No. 496 v. Austin*,
    418 U.S. 264 (1974)........................................................................ 20

*Panavision Int'l, L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998) ................................................... 9, 10

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006) ...................................................... 13

*Playboy Enters., Inc. v. Welles*,
    279 F.3d 796 (9th Cir. 2002) ....................................................... 16

*Scott v. Breeland*,
    792 F.2d 925 (9th Cir. 1986) ......................................................... 9

*Sierra Network, Inc. v. Tobacco Import USA*,
   No. CV 07-6104 DSF (CTX), 2008 WL 11338578 (C.D. Cal. June 2,
   2008) ....................................................................................................... 12, 13

*Smart Energy Today, Inc. v. Hoeft*,
   No. CV158517DSFAJWX, 2016 WL 8200432 (C.D. Cal. June 20, 2016) ........... 13, 14

*Smith v. Chanel, Inc.*,
   402 F.2d 562 (9th Cir. 1968) ................................................................... 17

*Starbuzz Tobacco, Inc. v. Abdallah*,
   No. CV1003833MMMRZX, 2011 WL 13214313 (C.D. Cal. Nov. 2,
   2011) ........................................................................................................ 21

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
   610 F.3d 1171 (9th Cir. 2010) ................................................................. 15

*Trout Point Lodge, Ltd. v. Handshoe*
   729 F.3d 481 (5th Cir. 2013) ................................................................... 15

*Underwager v. Channel 9 Australia*,
   69 F.3d 361 (9th Cir. 1996) ............................................................... 20, 21

*In re W. States Wholesale Natural Gas Antitrust Litig.*,
   715 F.3d 716 (9th Cir. 2013) ..................................................................... 9

*Wynn v. Chanos*,
   75 F. Supp. 3d 1228 (N.D. Cal. 2014) ...................................................... 21

**State Cases**

*ComputerXpress, Inc. v. Jackson*,
   93 Cal. App. 4th 993 (2001) ............................................................... 22, 24

*Gantry Constr. Co. v. Am. Pipe & Constr. Co.*,
   49 Cal. App. 3d 186 (1976) ..................................................................... 19

*Hecimovich v. Encinal Schl. Parent Teacher Org.*,
   203 Cal. App. 4th 450 (2012) ................................................................. 19

*Hughes v. Hughes*,
   122 Cal. App. 4th 931 (2004) ................................................................. 25

*John Doe 2 v. Sup. Ct.*,
   1 Cal. App. 5th 1300 (2016) ............................................................... 23, 24

*Kashian v. Harriman*,
   98 Cal. App. 4th 892 (2002) ............................................................... 19, 20

*Reed v. Gallagher*,
  248 Cal. App. 4th 841 (2016) ................................................................. 20

*Sullivan v. Oracle Corp.*,
  254 P.3d 237 (Cal. 2011) ...................................................................... 15

*Summit Bank v. Rogers*,
  206 Cal. App. 4th 669 (2012) ................................................... 22, 23, 24

**State Statutes**

Cal. Civ. Code § 47(c) ............................................................................. 2, 19

Cal. Civ. Code § 48 .................................................................................... 19

Cal. Code Civ. Proc. § 410.10 ..................................................................... 9

Cal. Penal Code § 632 .................................................................................. 5

Cal. Penal Code § 637 .................................................................................. 5

**Rules**

Fed. R. Civ. P. 12(b) ................................................................................... 15

Fed. R. Civ. P. 12(b)(2) ........................................................................... 2, 25

Fed. R. Civ. P. 12(b)(6) ........................................................................... 2, 25

**Other Authorities**

Canadian Trademark Act, R.S. (1985), ch. T-13 § 7(b) ............................ 15

Canadian Trademarks Act, R.S. (1985), c T-13 ........................................ 15

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This case has no connection to the Central District of California. Nor has Plaintiff Acquisition Management, Inc. ("Acquisition") stated a plausible claim.

Acquisition is a Wyoming company with its principal place of business in Wyoming. First Amended Complaint ("FAC") ¶ 15. Defendant Retreaver, Inc. ("Retreaver"), a competitor to Acquisition, has its principal and only place of business in Toronto, Canada, where all of its records and four total employees are located. Declaration of Jason Kolesnikowicz ("Kolesnikowicz Decl.") ¶¶ 4-6. While Retreaver has customers in California, they account for a small fraction of its worldwide customer base and revenue, and Retreaver acquired no California customers or sales from the Google search engine advertisements that Acquisition claims unlawfully referred to its alleged "Ringba" mark to describe Retreaver (a known competitor) as an "alternative" to Ringba. *Id.* ¶¶ 11, 15. Acquisition claims that Retreaver made defamatory comments about it to a "California Entity"—but in fact, the statements (which are privileged and not defamatory as a matter of law, and subject to a separately-filed motion to strike) were made to a person and entity in Florida. Declaration of Stan Pavlovsky ("Pavlovsky Decl.") ¶ 3; Request for Judicial Notice ("RJN"), Exs. 5, 6. In short, Acquisition's attempt to compel a Canadian-based company to appear and defend itself in California federal court over (1) claims that internet advertisements available anywhere in the United States, and (2) statements made to a Florida entity, allegedly harmed a Wyoming company does not comport with due process. Acquisition's claims should be dismissed because the Court has no personal jurisdiction over Retreaver.

Should this Court nonetheless be inclined to find that Acquisition has met its demanding burden of establishing personal jurisdiction over Retreaver, Retreaver moves in the alternative for dismissal of the FAC for failure to state a claim. Counts 1-5 fail because any alleged uses by Retreaver of Acquisition's alleged mark were indisputably nominative fair use. A nominative fair use occurs when a defendant, as here, "does not attempt to

1

capitalize on consumer confusion or to appropriate the cachet of one product for a different one." *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 307-08 (9th Cir. 1992). The Ninth Circuit has long recognized that "comparative advertising," as Acquisition alleges here (and which ceased months ago), is expressly protected by the nominative fair use doctrine. *Id.* at 308. Acquisition has further failed to state a claim for defamation (Count 6) because Retreaver's statements to a potential customer regarding Acquisition's unlawful business practices are squarely within the protection of the common interest privilege under Cal. Civ. Code § 47(c), and, further, none of the statements that Acquisition complains about are defamatory as a matter of law.

Thus, under either (and both) Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6), Acquisition's claims are deficient and its FAC should be dismissed. Moreover, dismissal with prejudice is appropriate because Acquisition has not—and cannot—cure these deficiencies through further amendment. *See* ECF Nos. 13, 14.

## II.   FACTUAL ALLEGATIONS

### A.   <u>Facts Relevant To The Court's Lack Of Personal Jurisdiction Over Retreaver</u>

Acquisition is a Wyoming corporation with its principal place of business in Wyoming. First Amended Complaint ("FAC") ¶ 15; RJN, Ex. 4. Retreaver has its principal (and only) place of business in Toronto, Canada, where its four employees and business records are located. Kolesnikowicz Decl. ¶ 6. Although Acquisition claims that Retreaver maintains an office in San Francisco, California, that is not true. FAC ¶¶ 5-6, Ex. A. Retreaver temporarily allowed its financial advisor's address in California to be listed on its corporate formation documents, but that was only because when Retreaver was formed it had no physical office but operated out of the personal residences of its owners. Kolesnikowicz Decl. ¶ 3. Retreaver has never operated in California, is not licensed to do business in the state, and has never paid California taxes. *Id.* ¶¶ 7-10.

This action arises from Retreaver's alleged use of "Ringba" as a Google AdWord and in advertisements displayed on the Google search engine that described Retreaver as a "Ringba Alternative," and statements that Acquisition claims Retreaver made to a

2

"California Entity" regarding it. FAC ¶¶ 27, 32. But Acquisition's allegations of any connection between these actions or the parties and California (let alone this district) are conclusory at best—if not altogether false. Retreaver did not target the advertisements at issue to California, Kolesnikowicz Decl. ¶ 16, and the advertisements did not result in any sales within this state, *id.* ¶ 15. Although Retreaver has seven (7) customers—out of a total of 178 worldwide—in California, none of those customers originated with the advertisements, and Retreaver's California revenue accounts for less than 2% of its revenue from its customers (even though California is home to more than 12% of the U.S. population). *Id.* ¶ 11, RJN, Ex. 7.

Acquisition's claims arising from statements that Retreaver allegedly made to a company that Acquisition baldly describes as a "California Entity" fare no better. FAC ¶¶ 37 – 38. Acquisition claims that a Retreaver employee, Stan Pavlovsky, made allegedly defamatory statements regarding Acquisition to an "Oscar Maglio", who allegedly works for HPJ Holdings. FAC ¶¶ 37-38, Ex. G at 4:12-15; Pavlovsky Decl. ¶ 3. But Oscar Maglio was a Florida resident (if a resident of the U.S. at all), and HPJ Holdings is a Florida entity—there is no California entity named "HPJ Holdings." RJN, Exs. 5, 6, 8-9.[1] It would be wholly unfair to compel Retreaver, based in Canada, to litigate claims in the Central District that do not even arise from conduct in this forum.

**B.    Facts Relevant To Retreaver's Nominative Fair Use Of "Ringba"**

Acquisition and Retreaver are competitors in the market for "pay-per-call and telephone call data analytics services." FAC ¶ 18; *id.* ¶ 24 (Acquisition alleges: "Retreaver is a competitor of Acquisition.").[2] Acquisition sells its services under an alleged trademark

---

[1]    At one point during the demos, Oscar stated that he was "in California[.]". FAC, Ex. G at 6:3-5. That statement was either false (since Oscar and HPJ Holdings are located in Florida), or simply referred to Oscar's transient presence in California during the call.

[2]    Acquisition alleges that it provides "software for use in sales and marketing and call centers, namely, for use in providing management, monitoring, reporting, marketing attribution, and analytics of telecommunication," including "Voice Over IP, SMS Messaging, call routing, [and] pay per call tracking." FAC, Ex. D. Retreaver also offers "pay as you go" call tracking, dynamic call routing, and analytics that tracks information regarding a caller's source, the context of the call, and conversion rates." FAC, Ex. F.

"Ringba," which it claims it has used since 2015, but that is not true because Acquisition did not even exist until October 2016. FAC ¶¶ 19, 20, RJN, Ex. 4. Acquisition's claims in Counts 1-5 against Retreaver all arise from Retreaver's alleged purchase of the AdWord "Ringba" and alleged use of the word "Ringba" in advertisements that describe Retreaver as an "Alternative." FAC ¶¶ 27, 32.



FAC, Ex. F. Comparative advertising, like that which Retreaver used, is common amongst competitors. Indeed, Acquisition operates a website that purports to set forth comparisons between its software and that of its competitors', touting Ringba as "the only call analytics software with native user data and analytics." RJN, Ex. 3 at 28; *see* FAC ¶ 76.

Importantly, Retreaver has ___**never**___ used the logo, font, color, or symbol that Acquisition displays with its alleged Ringba mark:



*E.g.*, FAC, Ex. 2. Acquisition, by contrast, has and continues to use Retreaver's entire logo, coloring, and full name (protected by U.S. trademark laws) without authorization on the website it operates:

4

FAC ¶ 76; RJN, Ex. 3 at 15. Posts on this website, like the ads that Acquisition complains about, describe "Retreaver Alternatives": ♥Retreaver Alternatives, Ringba, TrackDrive Alternatives  *Id.* at 16. However, unlike Retreaver, Acquisition goes even further and disparagingly describes Retreaver as lacking "a few real-time features such as listening to the conversation for the managers to be added and there is currently no billing feature." *Id.* at 15. Acquisition also hides from the public its ownership of the website on which it uses Retreaver's trademarks without permission, depicting the website as containing objective, third-party information, and nowhere stating that Acquisition, a competitor to Retreaver and the other companies described on the website, owns it. *E.g.*, *id.* at 49-50. By contrast, the links that included a comparative reference to Ringba led to Retreaver's own website.

## C.   Facts Relevant To Acquisition's Defamation Claim

Following the parties' meet and confer regarding Retreaver's grounds for dismissing the complaint based on nominative fair use, in its FAC, Acquisition attempts to assert a defamation claim. The claim is based on two sales demo calls that Stan Pavlovsky, Retreaver's Chief Revenue Officer, had with alleged potential Retreaver customers, "Oscar" and "Brock" who allegedly work for HPJ Holdings.[3] FAC ¶¶ 37-79; Ex. G at 4:12-15; Ex. H at 16:20.[4] Oscar allegedly contacted Retreaver to schedule a demo of Retreaver's services. FAC, Ex. G at 2:16-19. Over the course of Mr. Pavlovsky's demos to Oscar, Oscar informed Mr. Pavlovsky that he was also considering Acquisition's products and services, and he inquired several times of Mr. Pavlovsky's opinion of "Ringba." FAC, Ex. G at 9:24-10:3 (Oscar: "And what would—like in—in all honesty what could we expect to hear from the other companies, from Invoca or—Ringba?"); FAC, Ex. H at 15:14-24 (Oscar: "Well, what about the other ones? Are they all—are they going to start at 3K?" Stan: "Who? Like

---

[3]    Exhibits G and H are the subject of Retreaver's concurrently-filed motion to strike, because the surreptious recording of the conversation in Exhibit G violates Cal. Penal Code § 632, and the unauthorized disclosure of the conversations in Exhibits G and H violates § 637.

[4]    Brock only participated in the second demo. *See* FAC, Ex. H.

Ringba—" Oscar: "Yeah"). In response to Oscar's questions, Mr. Pavlovsky provided his opinion, based on true or disclosed facts, regarding Acquisition and several aspects of Acquisition's products.

### 1. DNC.com's Opinion Regarding Integration With Ringba

Mr. Pavlovsky informed Oscar that Acquisition's product is not integrated with "DNC.com," a platform that can help users avoid calling people who have placed their telephone numbers on a "Do Not Call" list. FAC, Ex. H at 4:21-5:1. Specifically, when Oscar asked about Retreaver's "compliance" capabilities, Mr. Pavlovsky informed Oscar that Retreaver is integrated with three platforms, including DNC.com, that can help customers with compliance. FAC, Ex. H at 4:14-9:22. Oscar then asked whether Ringba was integrated with those platforms, *id.* at 10:3, to which Mr. Pavlovsky replied:

> And I actually just got off the phone with DNC, and they have reached out to DNC before and -- and -- rather, DNC reached out to Invoca and Ringba and to -- and they were just like, 'It's -- it's a waste of our time. We're not going to do it.'

*id.* at 10:7-11; *see* FAC ¶ 44.[5] Mr. Pavlovsky then provided his opinion that Acquisition's and another competitor's systems are "not easy to integrate as a system." FAC, Ex. H at 10:23-13. Mr. Pavlovsky explained that, because DNC.com had chosen to not integrate with Acquisition, "if you're going to Invoca or you're going to Ringba, or you're going to any one of the other solutions out there, it's going to take you months and months and months and cost you lots and lots of money to even con—enough for you to even consider to do an integration," *id.* at 10:14-21, with which Oscar agrees, *id.* at 10:19 (Oscar: "Yes.").

---

[5]    Acquisition claims that Mr. Pavlovsky stated that DNC had determined it would be a "waste of time" to "<u>retain</u> Acquisition's services," but in actuality, Mr. Pavlovsky said something quite different—that DNC believed it would be a waste of *<u>DNC's</u>* time to *<u>integrate</u>* its product with Acquisition. *Compare* FAC ¶ 44, *with* Ex. H at 9:12-10:11 (emphasis added).

Acquisition alleges that these statements are false or defamatory because DNC.com had not contacted or evaluated Acquisition's services, but Acquisition concedes that it is *not* integrated with DNC.com. *See* FAC ¶¶ 44-50.

### 2. Acquisition's Website CallAnalyticsSoftware.com Has "Fake Reviews"

Mr. Pavlovsky also shared with Oscar his opinion that Acquisition has used "what I like to call, 'unsavory tactics'" in competing for customers in the call analytics industry. FAC, Ex. H at 22:19-23:2. As an example, Mr. Pavlovsky informed Oscar that Acquisition owns the website "callanalyticssoftware.com," which

> [S]hows itself as an impartial analytics review website. And then you see here that they're essentially conducting their own reviews between us and other systems and themselves and like Ringba versus Invoca versus Dialogtech [other competitors] or, you know, 'What are the best call analytic systems?' Like this is—this is fake reviews.

*Id.* at 23:3-12. Acquisition concedes that it owns and operates CallAnalyticsSoftware.com—which it discloses *nowhere* on the website that otherwise purports to provide objective, third-party content—but inexplicably contends that calling the website contents "fake reviews" is defamatory. FAC ¶¶ 76, 77; RJN, Ex. 3.

### 3. Ringba Was "Banned" From Retreaver For A "Racketeering Scheme"

While Oscar was asking Mr. Pavlovsky about price comparisons between Retreaver, Acquisition, and another competitor (Invoca), Mr. Pavlovsky informed Oscar that Acquisition was a Retreaver customer—a substantially true fact, given that Acquisition concedes that one of its owners and public representatives, Harrison Gevirtz, is a Retreaver customer. FAC ¶¶ 54, 46, Ex. H at 18:10-19:14. Mr. Pavlovsky explained to Oscar that Acquisition had been "banned" from Retreaver because Retreaver believed "they were doing a lot of very unsavory stuff." FAC, Ex. G at 9:16-19. When Oscar asked Mr. Pavlovsky to explain "[t]he reason" and "go on," Mr. Pavlovsky stated:

> [T]hey were very big in the tech support business. . . . The tech support business was essentially where people would—would get a, quote/unquote,

'virus' on their computer, and that would tell them, 'Call this number,' and it
would be a call center somewhere in India or somewhere else. And they would
be defrauded and told, 'Listen, you've got to pay us $100 to remove this virus,
and then we're going to give you protection.'

*Id.*, Ex. H at 19:16-20:0. Mr. Pavlovsky stated his opinion that this conduct is "like a
racketeering scheme, almost, you know, but . . . ." *Id.* at 20:8-9. As evidence, Mr.
Pavlovsky directed Oscar and Brock to a "relationship profile" website that displayed
"different websites that Ringba owns," and explained, "if you click on this domain and you
go there, this is one of those domains that installs a tool bar on Chrome and then starts
telling you, 'You must consult us,' and 'You must call this number.'" *Id.* at 20:19-21:2.
Oscar was extremely grateful for this information. *Id.* at 22:11-18 ("[S]ometimes, that's just
how things happen, and—you're getting the best first.").

Acquisition contends that these statements are defamatory, taking issue with Mr.
Pavlovsky's opinion that it engaged in a "racketeering scheme," and his statement that
Acquisition was "banned." FAC ¶¶ 55, 57-58. Notably, however, Acquisition does not
dispute Mr. Pavlovsky's description of the "tech support" scam that Mr. Gevirtz perpetrated
using Retreaver's services (in clear violation of Retreaver's Terms of Service). *Id.*; *e.g.*, *id.*,
Ex. B at 23 ("You agree not to do the following: . . . Use the Services to engage in or in
connection with fraudulent activity."). Acquisition further concedes that publicly-available
sources reported that it owned the website that downloaded "malware" onto visitors'
computers, just as Mr. Pavlovsky described. *Id.* ¶¶ 59-61, 70.

### 4.    An "FTC Complaint"

After Mr. Pavlovsky explained to Oscar the "tech support" scam described above,
Oscar asked: "So was it like, reported? What gives you guys the inkling just to actually
check?" FAC, Ex. H at 21:23-25. Mr. Pavlovsky stated in response: "Well, there was an
FTC complaint." *Id.* at 22:1. Mr. Pavlovsky did **not** state that there was an FTC complaint
filed against Acquisition, as Acquisition falsely contends. FAC ¶ 72. Rather, Mr.
Pavlovsky's statement is substantially true, because Mr. Gevirtz—an Acquisition owner and

8

Retreaver customer—has been named and identified in countless lawsuits, including lawsuits brought by the FTC. RJN, Ex. 10 at 108-110, Ex. 11 at 220, Exs. 12-15.

## III. ARGUMENT

**A.** **The Court Lacks Personal Jurisdiction Over Retreaver**

### 1. Standard For Ruling On A Rule 12(b)(2) Motion To Dismiss

"When a defendant moves to dismiss for lack of personal jurisdiction [pursuant to Rule 12(b)(2)], the plaintiff bears the burden of demonstrating that the court has jurisdiction." *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013). The court resolves all contested facts in plaintiff's favor, *id.*, but a plaintiff cannot establish jurisdiction by alleging bare jurisdictionally-triggering facts without providing evidence of their existence; rather, the plaintiff is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citation omitted).

"Personal jurisdiction over a nonresident defendant is tested by a two-part analysis." *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994). "First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute." *Id.* "Second, the exercise of jurisdiction must comport with federal due process." *Id.* at 1404-05 (citation omitted). Because California's long-arm statute reaches as far as due process allows, *see* Cal. Code Civ. Proc. § 410.10, the Court need consider only whether the exercise of jurisdiction comports with due process. Due process requires that nonresident defendants have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted).

Personal jurisdiction may be either general or specific. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8 & 9 (1984). "General jurisdiction exists when a defendant is domiciled in the forum state or his activities there are 'substantial' or 'continuous and systematic.'" *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (quoting *Helicopteros*, 466 U.S. 408 at 414-16). "Specific jurisdiction" exists

where a claim arises directly from a defendant's contacts with the forum. *See AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

### 2.    Retreaver Is Not Subject To General Jurisdiction In California

According to the Ninth Circuit, the "'paradigm' fora for general jurisdiction are a corporation's place of incorporation and principal place of business." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). "Only in an 'exceptional case' will general jurisdiction be available anywhere else." *Martinez*, 764 F.3d at 1062 (quoting *Daimler*, 571 U.S. at 139 n.19). Retreaver is a corporation formed under the laws of Delaware with its principal place of business (and all operations, business records, and employees) in Toronto, Canada. Kolesnikowicz Decl. ¶¶ 5-6. Thus, under the traditional "paradigm," California does not have general jurisdiction over Retreaver. *Martinez*, 764 F.3d at 1070.

Nor is this an "exceptional" case. Acquisition's conclusory allegation that Retreaver "conducts business within this Judicial District," FAC ¶ 3, does not come close to establishing the "'substantial'" or "'continuous and systematic'" contacts necessary to support general jurisdiction. *Panavision Int'l*, 141 F.3d at 1320 (quoting *Helicopteros*, 466 U.S. at 414-16). Retreaver has no offices, staff, or employees in California, is not licensed to do business in the state, does not pay California taxes, and does not have a registered agent for service of process in the state. Kolesnikowicz Decl. ¶¶ 4-10. Retreaver never operated out of its financial advisor's office that was temporarily listed on its corporate formation documents. *Id.* ¶ 4; *see Martinez*, 764 F.3d at 1070 (company with principal place of business in France, no "offices, staff, or other physical presence in California, and" not "licensed to do business in the state" not subject to general jurisdiction in California); *Marvix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1224 (9th Cir. 2011) (company that advertised within California, employed a California design firm, had business relationships within California, and maintained a "highly interactive" website not subject to general jurisdiction in the state where it had "no offices or staff in California, is not

registered to do business in the state, has no registered agent for service of process, and pays no state taxes").

Further, Retreaver's contacts with California are minimal. Retreaver currently has seven (7) customers located within California, out of its total of 178 customers, in 2019 its revenue generated from customers in California has accounted for less than 2% of its total revenue, and in 2018 it generated less than 1% of its worldwide revenue within the state. Kolesnikowicz Decl. ¶ 11. These contacts hardly suffice to find Retreaver "at home" in California. *Daimler,* 571 U.S. at 139 n. 20 ("A corporation that operates in many places can scarcely be deemed at home in all of them."); *see Martinez*, 764 F.3d at 1070 (contracts "worth between $225 and $450 million," sending representatives to "industry conferences, promot[ing][its] products, and meet[ing] with suppliers" and "advertising in trade publications" in California "plainly insufficient" to subject company to "general jurisdiction in California"). Acquisition has not satisfied, and cannot satisfy, the "demanding" standard for "general personal jurisdiction" over Retreaver in California. *Martinez*, 764 F.3d at 1069.

### 3.     Retreaver Is Not Subject To Specific Jurisdiction In California

A three-part test governs whether specific jurisdiction exists in the Ninth Circuit:

(1)  The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Mavrix Photo*, 647 F.3d at 1228. Acquisition "bears the burden of satisfying the first two prongs." *Id.* at 1228. If it does, "the burden then shifts to [Retreaver] to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* Although

11

"uncontroverted allegations" by Acquisition "must be taken as true," Acquisition cannot rely on bare allegations in the FAC, as it does here, to meet its burden. *Id.* at 1223.

**First**, Acquisition has made no non-conclusory allegation that Retreaver purposefully availed itself of the "privilege of conducting activities" in California. *Marvix Photo*, 647 F.3d at 1226. Acquisition alleges that Retreaver "conducts business within this Judicial District," but that bare-bones statement is precisely the kind that this Court has held is insufficient to plausibly confer specific jurisdiction over a foreign defendant. FAC ¶ 3; *see Sierra Network, Inc. v. Tobacco Import USA*, No. CV 07-6104 DSF (CTX), 2008 WL 11338578, at *3-4 (C.D. Cal. June 2, 2008) (Fischer, J.) ("conclusory allegation that 'Defendant(s) conduct business in California and in this judicial district, or otherwise avail themselves of the privileges and protections of the laws of the State of California'" was "insufficient to establish personal jurisdiction" (citations omitted)).

**Second**, while Retreaver has some customers in California, Acquisition has not plausibly alleged that its claims arise out of Retreaver's forum activities. *Ochoa v. J. B. Martin & Sons Farms, Inc.,* 287 F.3d 1182, 1188 (9th Cir. 2002). Acquisition's claims are based on (1) Retreaver's alleged use of "Ringba" in Google AdWords and comparative advertisements on the Google search engine, and (2) some statements that Acquisition claims were made to a "California Entity." FAC ¶¶ 27, 32, 37-38. Neither give rise to actionable forum-related conduct. The advertisements at issue resulted in no sales or new customers to Retreaver. Kolesnikowicz Decl. ¶ 15. Acquisition alleges no facts that support its conclusory allegation that Retreaver made alleged defamatory statements to a "California Entity." FAC ¶¶ 37-38. Rather, Acquisition, without support, describes the second party to the telephone calls with Mr. Pavlovsky as a "California Entity," instead of referring to the actual caller, Oscar Maglio, a Florida resident (if he is in the United States at all) employed by the Florida company HPJ Holdings, Inc. Pavlovsky Decl. ¶ 3; RJN, Exs. 5, 6, 8, 9.[6]

---

[6]    Even assuming that Oscar Maglio was temporarily in California for one demo with Mr. Pavlovsky, *see supra* n. 1, "[s]uch unilateral activity of . . . a third person is not

Acquisition's allegations that its claims are related to conduct in California are not true. *See Sierra Network*, 2008 WL 11338578, at *3-4 ("unsupported statement[s]" are not sufficient to meet plaintiff's burden of establishing personal jurisdiction); *Bragg Live Foods, Inc. v. Eco Action SDN BHD*, No. CV158261DSFJPRX, 2016 WL 7446915, at *3 (C.D. Cal. Apr. 29, 2016) (Fischer, J.) (claim that defendants "actively participated in acts and omissions directed towards California consumers" did not support personal jurisdiction absent allegations establishing "what any of those acts or omissions were or how they were directed at California").

Acquisition itself is not even located in the Central District of California; it is a Wyoming corporation located in Wyoming. FAC ¶ 15; RJN, Ex. Its choice of forum in the Central District of California asserting claims against a company based in Toronto, Canada from statements made to a Florida entity, therefore, makes no sense. *See Smart Energy Today, Inc. v. Hoeft*, No. CV158517DSFAJWX, 2016 WL 8200432, at *2–3 (C.D. Cal. June 20, 2016) (Fischer, J.) (no personal jurisdiction over foreign defendant where "Plaintiff is domiciled in Washington," content at issue was "posted on the Internet and" did not "target people in California," and "[t]here is no indication that the brunt of the harm was suffered in California").

Acquisition also alleges that Retreaver's alleged uses of the Ringba trademark "increased internet traffic to Retreaver's websites, and likely increased sales," FAC ¶ 35, but that is not true. The AdWord that Retreaver purchased and its advertisement displayed in Google search engine results were ***not*** directed or targeted to California in any way; rather, they were passively displayed to individuals who may use the Google search engine anywhere in the United States. Kolesnikowicz Decl. ¶¶ 14. The Ninth Circuit and this Court have frequently held that claims based on content on passive websites, not specifically targeted to California customers, do not confer specific jurisdiction in

---

appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros*, 466 U.S. at 417.

California federal court.[7] *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006) (website that reaches forum insufficient for jurisdiction); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997) (no jurisdiction where there was no evidence that defendant targeted forum residents by website); *Smart Energy Today*, 2016 WL 8200432, at *2–3 (allegedly libelous and defamatory materials posted on "AngiesList.com and Yelp.com" that "are available to anyone in the United States with Internet access" did not support specific jurisdiction over defendants in California); *Bragg Live Foods*, 2016 WL 7446915, at *3 (website "accessible in California" did not establish jurisdiction where plaintiff did not allege that defendants "encouraged California residents to access the site or that they targeted California buyers in any way").

Because Acquisition has not (and cannot) meet its burden of proof on the first two factors, "the Court need not address whether exercising personal jurisdiction" "would be reasonable" to dismiss Acquisition's FAC. *Kaplan v. Intl. Data Grp., Inc.*, No. CV 15-406 DSF (MANX), 2015 WL 12806463, at *4 (C.D. Cal. Mar. 17, 2015) (Fischer, J.).[8]

---

[7]    Acquisition asserts that references in Retreaver's prior, outdated Terms of Service to a Delaware choice of law and Colorado forum selection clause are relevant to the Court's personal jurisdiction over Retreaver. FAC ¶¶ 7-9. They are not. Acquisition has not filed suit in Delaware or Colorado. Acquisition disputes that it is a party to Retreaver's Terms of Service and does not assert any claims arising from Retreaver's Terms of Service that would be subject to the outdated forum selection clause. FAC ¶ 53. After this suit was filed, Retreaver realized that its Terms of Service and other policies had not been updated from its predecessor entity and updated the choice of law and venue provisions, among other changes. Kolesnikowicz Decl. ¶ 12.

[8]    Exercising jurisdiction over Retreaver would also be unreasonable. *See Int'l Shoe Co.*, 326 U.S. at 316. The Court considers seven factors to determine whether exercising personal jurisdiction is reasonable. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002) (listing the factors). The first factor favors Retreaver because it has minimal contacts with California. *Imageline, Inc. v. Hendricks*, No. CV 09-1870 DSF AGRX, 2009 WL 10286181, at *5–6 (C.D. Cal. Aug. 12, 2009) (Fischer, J.) (first factor favors defendants where their contacts with California were not sufficient to meet the "purposeful direction prong of the personal jurisdiction analysis"). The second, fourth, sixth, and seventh factors also favor finding no personal jurisdiction because Retreaver has no offices, employees, or witnesses within California, Acquisition is also not located in California, California has no interest in this dispute between foreign defendants over activities that were not directed to the state, and an adequate alternative forum in Toronto, Canada (where Retreaver and its evidence and witnesses are located) exists. *Id.* at *5-6 (finding the second, fourth, sixth and seventh factors favor defendant where neither party was located within California and an adequate alternative forum where the defendant resided existed); *see Etaliq, Inc. v. Cisco Sys., Inc.*, No. CV113672GAFFFMX, 2011 WL 13220445, at *2 (C.D.

**B.**    **Acquisition Has Failed To State A Plausible Claim**

**1.**    **Standard For Ruling On A Rule 12(b)(6) Motion To Dismiss**

Should the Court be inclined to deny Retreaver's motion to dismiss for lack of personal jurisdiction, Retreaver brings this motion pursuant to Fed. R. Civ. P. 12(b)(6) as alternative—and complete—grounds for dismissal. *See* Fed. R. Civ. P. 12(b).

"[W]hen ruling on a defendant's motion to dismiss," the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). A court is "not bound to accept as true a legal conclusion couched as a factual allegation," and a complaint containing "naked assertions" "devoid of further factual enhancement" does not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (citation omitted).

**2.**    **Any Use Of Acquisition's Alleged Marks Was Nominative Fair Use**

"[N]ominative fair use" occurs when a defendant uses a plaintiff's trademark to describe plaintiff or the plaintiff's product to describe defendant's own product.[9] *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1150 (9th Cir. 2002) (citing *New Kids*, 971 F.2d at 308).

---

Cal. July 20, 2011) ("[N]umerous other courts, including the Ninth Circuit, have held that Canada is an adequate alternative forum.") (collecting authorities). The third factor is neutral because Canada has a regime for protecting trademarks, the Canadian Trademarks Act (R.S.C., 1985, c T-13), protecting against defamation, and it is not clear that Acquisition, a foreign Plaintiff, can assert a claim under § 17200 against a foreign Defendant arising from conduct extraneous to the state. *See Trout Point Lodge, Ltd. v. Handshoe* 729 F.3d 481, 489 (5th Cir. 2013) (discussing defamation claims under Canadian law); *New Name, Inc. v. The Walt Disney Co.*, No. CV 07-5034 PA(RZX), 2008 WL 5587486, at *10 (C.D. Cal. July 25, 2008) (recognizing cause of action for trademark infringement under Canadian Trademark Act, R.S. (1985), ch. T-13 § 7(b)); *Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 (Cal. 2011) ("the presumption against extraterritoriality applies to the UCL in full force"). The fifth factor favors Retreaver because any evidence that may be relevant to Acquisition's claims is in Canada (or Florida, where HPJ Holdings is), and neither party resides in California. *Imageline*, 2009 WL 10286181, at *6 (fifth factor looks "primarily at where the witnesses and the evidence are likely to be located"). That Acquisition's counsel may reside in California does not favor retaining jurisdiction over Retreaver in this District. *Id.* ("Plaintiff's primary reason for selecting California as the forum appears to be that Plaintiff's counsel is located in California. This factor weighs in favor of Defendants.").

[9]    The nominative fair use doctrine is grounded in the First Amendment, which protects "truthful communication between buyers and sellers in the marketplace." *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1176 (9th Cir. 2010) (trademark injunction "involving nominative fair use" "can raise serious First Amendment concerns").

Where a party "does not attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a different one," and "does not imply sponsorship or endorsement by the trademark holder," the use is a nominative fair use. *New Kids*, 971 F.2d at 308.

Retreaver's nominative fair use of "Ringba" is a defense to Acquisition's first five claims, because they all hinge on the same allegation—that Retreaver used Acquisition's alleged trademark without authorization to show that Acquisition sponsored Retreaver's services. FAC ¶¶ 27-36. *New Kids*, 971 F.2d at 308 (applying test to federal and state claims for trademark infringement, false advertising, and unfair competition, stating that "the first seven causes of action, while purporting to state different claims, all hinge on one key factual allegation: that the newspapers' use of the New Kids name in conducting the unauthorized polls somehow implied that the New Kids were sponsoring the polls"). The Ninth Circuit has recently affirmed that courts can and should dismiss a complaint for failure to state a claim where, as here, it is clear that a defendant's use was nominative fair use. *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 897-98 (9th Cir. 2019).

Nominative fair use requires the following three elements: (1) the plaintiff's product or service in question must be one not readily identifiable without use of the trademark; (2) only so much of the mark or marks may be used as is reasonably necessary to identify the plaintiff's product or service; and (3) the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. *New Kids*, 971 F.2d at 308. All three are shown here.

***First***, the Ninth Circuit has frequently held that a "descriptive alternative" "need not be employed where use of a mark is necessary to refer to a specific brand or product." *Applied Underwriters*, 913 F.3d at 893-94 (collecting authorities). For example, trademark law does not require a model to turn to "absurd descriptive phrases" such as "the 'nude model selected by Mr. Hefner's magazine as its number-one prototypical woman for the year 1981'" to avoid liability for using her trademarked title, "Playmate Of The Year." *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 802 (9th Cir. 2002). Similarly, the Ninth Circuit has held that a defendant offering a seminar that critiques a plaintiff's workers'

16

compensation insurance services is allowed under the nominative fair use doctrine to use the plaintiff's trademarked business name—Applied Underwriters—and trademarked workers' compensation insurance services—EquityComp—in promotional materials. *Applied Underwriters*, 913 F.3d at 894-95. The Ninth Circuit in *Applied Underwriters* reasoned that the "descriptive alternative[s]" that the plaintiff proposed, such as "Risk Sharing Workers' Comp Program" or "Captive Workers' Comp Arrangement Program" "need not be employed where use of a mark is necessary to refer to a specific brand or product." *Id.* at 894. Here, Acquisition concedes that it is a competitor with Retreaver. FAC ¶ 25. The law does not require Retreaver to use a "descriptive alternative" such as "pay-per call and telephone data analytics services," when referring to Acquisition, which would not convey to consumers that Retreaver's services are a comparable "alternative" to those offered with the Ringba mark. This is particularly true for services like those here, that are technical in nature and may not be understood by their description as well as by reference to another brand that offers the same services. FAC ¶¶ 18-19, Ex. E; *Applied Underwriters*, 913 F.3d at 894-95. Retreaver's alleged use of the alleged Ringba mark simply to identify its services as an "alternative" is consistent with established Ninth Circuit precedent finding that nominative fair use protects "comparative advertising." *See New Kids*, 971 F.2d at 308 (the first fair use factor is met where a trademark is used for "comparative advertising"); *Smith v. Chanel, Inc.*, 402 F.2d 562, 565-66 (9th Cir. 1968) ("[the] use of another's trademark to identify the trademark owner's product in comparative advertising is not prohibited by either statutory or common law").

**Second**, Retreaver has only used as much of Acquisition's alleged mark as is necessary to identify its product. The second factor "should focus not on the number of uses of Plaintiffs marks, but on whether Defendants used more of each individual mark than was necessary in terms of font and stylization." *Applied Underwriters*, 913 F.3d at 895. Thus, "a soft drink competitor would be entitled to compare its product to Coca-Cola or Coke," under nominative fair use, so long as, as here, a plaintiff's "distinctive lettering" is not employed. *New Kids*, 971 F.2d at 308 n.7. Here, Retreaver did not "use any part of

17

Plaintiff's service marks, the distinctive lettering or design, rather [it] only used the term" "Ringba." *Applied Underwriters*, 913 F.3d at 895; *see* FAC, Ex. E. Indeed, Retreaver's use of "Ringba" pales in comparison to Acquisition's wholesale copying of Retreaver's <u>entire</u> stylized word mark and logo without permission on callanalyticssoftware.com, on which Acquisition (unlike Retreaver), disparages Retreaver. RJN, Ex. 3 at 15; FAC ¶ 76. The second fair use factor is met. *See Applied Underwriters*, 913 F.3d at 895 (second fair use factor met where defendants "used only the words themselves").

**Third**, Retreaver has clearly not implied any sponsorship or endorsement by Acquisition of Retreaver's products and services. The exact opposite is true. The Ninth Circuit has held that "criticism of a product tends to negate the possibility of confusion as to sponsorship and endorsement." *Applied Underwriters*, 913 F.3d at 897 (citing *New Kids*, 971 F.2d at 308-09). Here, Retreaver clearly stated in the advertisements that it is an "Alternative" to services sold under the "Ringba" mark. *See* FAC, Ex. F. Acquisition employs the <u>exact same</u> language on its website. RJN, Ex. 3 at 16. It is, therefore, wholly implausible that any consumers would think that Acquisition sponsored or endorsed Retreaver's content marketing itself as a competitor, and it is further disingenuous of Acquisition to make that allegation. *See Applied Underwriters*, 913 F.3d at 896-97 (holding it implausible that consumers would be confused regarding plaintiff's sponsorship of a seminar marketed by describing how it trains customers avoid plaintiff's predatory practices, and affirming grant of motion to dismiss on nominative fair use); *New Kids*, 971 F.2d at 308-09 (holding that consumers would not be confused by the use of the New Kids on the Block mark in announcements for opinion polls that suggested people might find the band a "turn off"); *see Cairns*, 292 F.3d at 1154 (third factor satisfied where nothing in defendant's advertisements for princess Diana related products "claim that these products are sponsored or endorsed by the" the owner of princess Diana's trademarks). All three factors are easily satisfied here, and the Court should dismiss Acquisition's claims because Retreaver's alleged uses of the alleged Ringba mark were nominative fair use. *See Applied Underwriters*, 913 F.3d at 896-97.

18

### 3.    Retreaver's Statements To HPJ Holdings Are Common-Interest Privileged

California Civil Code § 47(c) creates a "common interest privilege" that protects statements made "without malice, to a person interested therein," "by one who is also interested," or by a person "who is requested by the person interested to give the information." Cal. Civ. Code § 47(c); *see Hecimovich v. Encinal Schl. Parent Teacher Org.*, 203 Cal. App. 4th 450, 471-72 (2012). "Malice is not inferred from the communication" for purposes of defeating the common interest privilege, but must be alleged. Cal. Civ. Code § 48. Statements that are "inaccurate" or "unreasonable" are not malicious. *Kashian v. Harriman*, 98 Cal. App. 4th 892, 932 (2002).

For example, in *Gantry Constr. Co. v. Am. Pipe & Constr. Co.*, 49 Cal. App. 3d 186 (1976), the court addressed whether the common interest privilege protected statements made by a party selling pipe for use in a construction project to the entity that issued a bond guaranteeing completion of the project. *Id.* at 190-91, 196-97. The seller told the bonding party that the construction company was "seriously in default" in payments for the pipe. *Id.* at 191. The court held that "there can be no doubt" that the seller and bonding party were "interested" in the defaults, and because the plaintiff failed to allege malice, the privilege applied. *Id.* at 197-98. In *Hecimovich*, the court addressed whether statements by a parent teacher organization ("PTO") and volunteers that an individual was "unfit to coach" in a school basketball program were protected by the common interest privilege. The court reasoned that even "assuming" the statement was defamatory, it was privileged because all participants in the communication—school officials, PTO members responsible for the basketball program, an assistant coach, parents—were "'interested persons' who either requested the information or were entitled to it." *Hecimovich*, 203 Cal. App. 4th at 471-72.

As in *Gantry* and *Hecimovich*, the common interest privilege applies here. There can be no doubt that Retreaver and HPJ Holdings are "interested" in avoiding fraudulent activity and deterring unfair business practices with their customers and services, as Mr. Pavlovsky explained Acquisition's owner had perpetrated on the Retreaver platform.

19

Further, in many if not all instances, Mr. Pavlovsky's statements were made in direct response to Oscar's questions. FAC, Ex. H at 19:16, 20:12, 21:23-25. Retreaver's and HPJ Holdings' shared interested is also evident in Oscar's gratitude to Mr. Pavlovsky for the information that he provided. FAC, Ex. H at 22:1711-18. Finally, Acquisition's "bare assertion" that Mr. Pavlovsky's statements were false does not make them malicious. *Kashian*, 98 Cal. App. 4th at 932. Although in some instances Acquisition contends Mr. Pavlovsky made knowingly false statements—those statements are either opinions, or true.[10] The common interest privilege requires dismissal of Acquisition's defamation claim.

### 4.    Retreaver's Statements Are Not Defamatory

"The *sine qua non* of recovery for defamation" "is the existence of falsehood." *Old Dominion Branch No. 496 v. Austin* 418 U.S. 264, 283 (1974). "California law permits the defense of substantial truth" and absolves "a defendant even if she cannot justify every word of the alleged defamatory matter[.]" *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-17 (1996) (citations omitted). "Minor inaccuracies do not amount to falsity so as long as the substance, the gist, the sting, of the libelous charge be justified." *Id.*

"Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Reed v. Gallagher*, 248 Cal. App. 4th 841, 855 (2016). The First Amendment protects "'statements that cannot reasonably be interpreted as stating actual facts about an individual.'" *Knievel v. ESPN*, 393 F.3d 1068, 1074–75 (9th Cir. 2005) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)). By this protection, courts assure "that public debate will not suffer for lack of imaginative expression or the rhetorical hyperbole which has traditionally added much to the discourse of our Nation." *Knievel*, 393 F.3d at 1074-75 (quoting *Milkovich,* 497 U.S. at 20). In determining whether a statement can reasonably be interpreted as a factual assertion, courts

---

[10]    *See* FAC ¶ 48, *supra* n.5; FAC ¶¶ 58, 71, *infra* § III(B)(4)(c), (d); FAC ¶¶ 64, 60, 70; FAC ¶ 74, infra § III(B)(4)(d).

20

in the Ninth Circuit examine the "totality of the circumstances in which it was made." *Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1996).

> First, we look at the statement in its broad context, which includes the general tenor of the entire work, the subject of the statements, the setting, and the format of the work. Next we turn to the specific context and content of the statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation. Finally, we inquire whether the statement itself is sufficiently factual to be susceptible of being proved true or false.

*Knievel*, 393 F.3d at 1074–75 (quoting *Underwager*, 69 F.3d at 366). The "context in which the statement appears is paramount in our analysis, and in some cases it can be dispositive." *Knievel*, 393 F.3d at 1075. The application of this test is a question of law for the court. *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1234 (N.D. Cal. 2014). It is proper for a court to consider extrinsic evidence incorporated by reference in a complaint when assessing whether an allegedly defamatory statement is a nonactionable opinion. *Knievel*, 393 F.3d at 1076. Acquisition has no claim for defamation because the statements that it complains of are either substantially true, or nonactionable opinion.

a. DNC.com Is Not Integrated With Ringba, And Its Opinion On Ringba Is Protected

Acquisition claims that Mr. Pavlovsky's statements indicating that DNC viewed integrating with Acquisition as a "waste of" DNC.com's time are defamatory. But those statements are plainly Mr. Pavlovsky's and DNC.com's opinions, based on facts that Acquisition concedes are true. *See supra* § II(C)(1). Acquisition *concedes that it is not integrated with DNC.com but is integrated with a similar service*, FAC ¶ 50, and it is, therefore, substantially true that it would be a "waste" of time, and likely an expensive and lengthy process, to override that aspect of Acquisition's software. This statement is further couched with vague, exaggerated language that Mr. Pavlovsky uses to compare Retreaver to its competitors, including Mr. Pavlovsky's view that it would take "months and months and cost you lots and lots of money to even" "consider to do an integration" with DNC.com,

21

because Retreaver's competitors are "not easy to integrate as a system." FAC, Ex. H at 10:12-21. Courts have found that "loose, figurative, or hyperbolic language" describing competing products, as Mr. Pavlovsky used, "negate[s] the impression" that a speaker is asserting as provable fact. *Milkovish*, 497 U.S. at 21; *see also Starbuzz Tobacco, Inc. v. Abdallah*, No. CV1003833MMMRZX, 2011 WL 13214313, at *4 (C.D. Cal. Nov. 2, 2011) (in action between competitors, statements that defendant's product was the "same or even better than" plaintiff's not defamatory because they do "not attack Starbuzz's reputation" but, "[a]t most, they mildly disparage the quality of Starbuzz's products); *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 700 (2012) (statements that bank was "mismanaged and rendered poor service and that the Bank's depositors would be well advised to move their accounts 'before its too late' and 'before they close'" did not imply "provably false factual assertions" but "nonactionable opinions").

    b.  <u>Whether CallAnalyticsSoftware.com Is "Fake Reviews" Is Nonactionable Opinion</u>

        Acquisition claims that Mr. Pavlovsky's statement that a website owned and operated by Acquisition contains "fake reviews" is defamatory, but that is a statement of Mr. Pavlovsky's opinion, supported by true, disclosed facts. *See supra* § II(C)(2). Acquisition *concedes* that it owns and operates the website callanalyticssoftware.com—the website that Mr. Pavlovsky disclosed to Oscar during the call. FAC ¶ 76. Mr. Pavlovsky stated his opinion that Acquisition's use of a pseudonymous website to post information that purports to originate with an objective third-party (not Acquisition, which is mentioned nowhere on the website) is "what I like to call,' unsavory tactics,'" or "[l]ike" "fake reviews." FAC, Ex. H at 22:15-23:2. This is quintessential, nonactionable name calling or exaggeration, couched in explicit statements of opinion, and based on true facts available to the third-party, HPJ Holdings. RJN, Ex. 3 at 49-51; *Gardner v. Martino*, 563 F.3d 981, 988–89 (9th Cir. 2009) (radio talk show host's statements that retail store was "lying to you" and "Will they admit to us that they . . . they went back on their word?" were not assertions of fact but an interpretation of facts equally available to the host and a listener of the show—a customer's immediately preceding commentary regarding difficulties with having a product

repaired that was purchased from the store); *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1013 (2001) (statements that plaintiff's business was a "scam" and "fraud" held, in context, "statements of opinion and not fact," because they "lacked the characteristic of typical fact-based documents" and were "replete with explicit statements of opinion, such as 'IMO [in my opinion],' 'what I think is a fraud,' 'I firmly believe,' 'is that fraud?' and 'my guess is'"); *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 697-98 (2012) (statements that bank's CEO "thinks the Bank is her personel [sic] Bank to do with as she pleases" and is a "problem bank" were "name calling, exaggeration, and ridicule" that courts hold is "nonactionable speech").

    c.  <u>That Retreaver "Banned" Acquisition Is Opinion Or Substantially True</u>

        Acquisition claims that Mr. Pavlovsky's statements implying that Acquisition engaged in a "racketeering scheme" on the Retreaver platform, for which it was "banned," are defamatory, but those statements are, again, clearly Mr. Pavlovsky's opinion, based on disclosed facts that Acquisition either concedes are true or does not dispute. *See supra* § II(C)(3). *First*, Acquisition concedes that one of its owners and public representatives, Mr. Gevirtz, is a Retreaver customer. FAC ¶¶ 54, 56, 67. Mr. Pavlovsky's statement that Acquisition was a customer of Retreaver is, thus, substantially true. *See Masson*, 501 U.S. at 516-17 ("Minor inaccuracies do not amount to falsity"). Moreover, there is nothing defamatory about the fact that an Acquisition owner has a Retreaver account (Acquisition alleges no defamatory implication). *See John Doe 2 v. Sup. Ct.*, 1 Cal. App. 5th 1300, 1317-18 (2016) (allegation of "common ownership," even if false, not defamatory).

        *Second*, Acquisition <u>does not dispute</u> the details that Mr. Pavlovsky provides regarding the tech support scam that Mr. Gevirtz perpetrated using Retreaver's services. FAC, Ex. H at 19:16-20:9; *supra* § II(C)(3). Acquisition takes issue with Mr. Pavlovsky's view that maliciously downloading a virus onto visitors' computers and then requiring them to pay a fee to remove it is "like" "almost" "you know" a "racketeering scheme," but Mr. Pavlovsky's use of the words "like" "almost" and "you know" couching a reference to racketeering signals to a reasonable listener that this is Mr. Pavlovsky's opinion, not an

assertion of fact. *See Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6 (1970) (newspaper articles stating that people characterized developer's negotiating position as "blackmail" not actionable because "no reader could have thought that the speakers . . . were charging [the developer] with the commission of a criminal offense" but would have understood that "the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered [the developer's] negotiating position extremely unreasonable"); *ComputerXpress*, 93 Cal. App. 4th at 1013.

Moreover, Acquisition does not dispute that the facts that Mr. Pavlovsky relayed to Oscar supporting his opinion are substantially true—publicly-available sources reported that Acquisition operated a website that downloaded malware onto visitors' computers. FAC ¶¶ 60-61, 70; Ex. H at 19:16-21:2. In *Gardner*, the Ninth Circuit held that a radio talk show host's statements asserting that a retail store owner was "lying to you" and "[w]ill they admit to us that they" "went back on their word?" were not assertions of fact but nonactionable opinions, interpreting facts available to listeners of the show, where the host stated his opinion immediately following a customer's aired testimony that the retail store failed to address difficulties with a product purchased from the store. 563 F.3d at 988-89. As in *Gardner*, Mr. Pavlovsky's interpretation of Acquisition's ownership of a website that downloaded malware as a scam is a nonactionable opinion, based on facts available to Oscar to interpret for himself. Acquisition may dispute Mr. Pavlovsky's understanding that it was behind the scam, but Acquisition cannot dispute that the facts Mr. Pavlovsky's investigation objectively supported his opinion. *See* FAC ¶¶ 59-61, 70.

*Third*, Mr. Pavlovsky's statement that Acquisition was "banned" from Retreaver are clearly hyperbole and opinion. Mr. Pavlovsky uses the term "banned" in context with his opinion that Acquisition does "a lot of very unsavory stuff," denoting to a reasonable listener that this is a form of "name calling, exaggeration, and ridicule"—"nonactionable speech." FAC, Ex. G at 9:16-19; *Summit Bank*, 206 Cal. App. 4th at 698-99. The conduct that Mr. Pavlovsky described is clearly prohibited by Retreaver's Terms of Service, and a reasonable listener would have understood his use of the hyperbolic term "banned" to imply

24

that fact. FAC, Ex. B at 23; *see John Doe 2*, 1 Cal. App. 5th 1300, 1317-18 (statement that plaintiff engaged in "bad business practices" and a third-party was being "burned" were nondefamatory hyperbole referring to perceived conflict of interest).

      d. <u>There Is An "FTC Complaint" Involving Acquisition's Owner</u>

      Lastly, Acquisition claims that it was defamed because Mr. Pavlovsky stated an "FTC Complaint" was "filed against Acquisition[.]" FAC ¶ 72. That is not true. *First*, Mr. Pavlovsky did not state that Acquisition was named in an FTC complaint; he simply referred in non-specific terms to an "FTC Complaint" when Oscar asked him when Retreaver investigates its customers' uses of its platform. FAC, Ex. H at 21:23-25. *Second*, Acquisition's owner, a Retreaver customer, has been named and identified in countless lawsuits, including those brought by the FTC. RJN, Exs. 10-15. This statement is, therefore, substantially, if not entirely, true. *Masson*, 501 U.S. at 416-17 ("Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified."); *Hughes v. Hughes*, 122 Cal. App. 4th 931, 936-39 (2004) (statement "our dad's a pimp" was not defamatory where plaintiff had engaged in pimping in the past).

## IV.   CONCLUSION

      For the forgoing reasons, Retreaver respectfully requests that the Court dismiss this case for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). In the alternative, Retreaver respectfully requests that the Court dismiss each of Acquisition's claims pursuant to Fed. R. Civ. P. 12(b)(6).

Dated:  December 2, 2019        Respectfully submitted,

                       GREENBERG TRAURIG, LLP


                     By:  */s/ Nina D. Boyajian*
                         Nina D. Boyajian
                         Rebekah S. Guyon
               Attorneys for Defendant Retreaver, Inc.