MARC E. HANKIN (SBN: 170505)
E-Mail: Marc@HankinPatentLaw.com
ANOOJ PATEL (SBN: 300297)
E-Mail: Anooj@HankinPatentLaw.com
**HANKIN PATENT LAW,**
A Professional Corporation
12400 Wilshire Boulevard, Suite 1265
Los Angeles, CA 90025
Telephone: (310) 979-3600
Facsimile: (310) 979-3603

Attorneys for Plaintiff,
**ACQUISITION MANAGEMENT, INC.**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACQUISITION MANAGEMENT, INC., | CASE No. 2:19-cv-06814-DSF-KS |
| Plaintiff, | **PLAINTIFF ACQUISITION MANAGEMENT, INC.'S OPPOSITION TO DEFENDANT RETREAVER, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(2) AND 12(B)(6) AND MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| RETREAVER, INC., and DOES 1-5, inclusive, | |
| Defendants. | |
| | Hon. Dale S. Fischer |
| | Courtroom: 7D |
| | Hearing Date: December 30, 2019 |
| | Hearing Time: 1:30 PM |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Table Of Contents

I.      INTRODUCTION ...................................................................................1

II.     RETREAVER'S CONTACTS WITH CALIFORNIA..............................2

        A.     Retreaver's Physical Address In California................................2

        B.     Retreaver's Google Adwords Campaign Targeted California..................3

        C.     Retreaver's Existing Contacts With California...........................3

        D.     Acquisition Made Knowingly Defamatory Statements To A California Contact ....................................................................4

III.    RETREAVER'S ACTIONS IDENTIFIED HEREINABOVE ARE SUFFICIENT TO ESTABLISH SPECIFIC PERSONAL JURISDICTION.................................5

IV.     RETREAVER'S USE OF ACQUISITION'S RINGBA TRADEMARK SUFFICIENTLY CONSTITUTES A CLAIM UPON WHICH RELIEF MAY BE GRANTED ........................................................................................8

V.      RETREAVER'S DEFAMATORY STATEMENTS SUFFICIENTLY CONSTITUTE A CLAIM UPON WHICH RELIEF MAY BE GRANTED......................9

        A.     Statements Regarding DNC Were False And Harmful .........................10

        B.     Acquisition's Website CallAnalyticsSoftware.com Does Not Have "Fake Reviews".......................................................................10

        C.     Acquisition Was Never Banned From Retreaver And Never Engaged In A "Racketeering Scheme" ............................................11

        D.     Acquisition Was Never Banned As A Result Of Any FTC Complaint.................12

        E.     California Civil Code Section 47(c) Does Not Create Any Qualified Privilege Here ...........................................................13

VI.     ACQUISITION OBTAINED THE RECORDINGS OF THE DEMONSTRATIONS LEGALLY AND THE TRANSCRIPTS SHOULD NOT BE STRICKEN............................................................14

        A.     All Parties Consented To The Recordings Upon Which The Transcripts Are Based, Pursuant to California Penal Code Section 632 ...................15

        B.     Mr. Maglio Consented To The Publication Of The Transcripts, Pursuant to California Penal Code Section 637 ......................15

        C.     Canadian Law Provides For One-Party Consent In Recordings...........................16

VII.    CONCLUSION.....................................................................................16

**PLAINTIFF ACQUISITION MANAGEMENT, INC.'S OPPOSITION TO DEFENDANT
RETREAVER, INC.'S MOTION TO DISMISS AND MOTION TO STRIKE**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Table Of Authorities

**Cases**

*AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586 (9th Cir. 1996) ...................................6

*Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398 (9th Cir. 1994) .............................................6

*Gantry Constr. Co. v. Am. Pipe & Constr. Co.*, 49 Cal. App. 3d 186 (1976) ...............................14

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ...............................6

*In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716 (9th Cir. 2013) ...............6

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) .......................................................6

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218 (9th Cir. 2011) ..........................7

*New Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302 (9th Cir. 1992) ...............8

*Old Dominion Branch No. 496 v. Austin*, 418 U.S. 264 (1974) ...............................................9

*Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998) ........................................6

*Scott v. Breeland*, 792 F.2d 925 (9th Cir. 1986) ...........................................................6

**Statutes**

Cal. Code Civ. Proc. Section 410.10 ...........................................................................6

California Civil Code Section 47(c) ..........................................................................13

California Penal Code Section 632 ........................................................................14, 15

California Penal Code Section 637 ........................................................................14, 15

Canadian Criminal Code Section 182(2)(a) ..................................................................16

**Rules**

Fed. R. Civ. P. 12(b)(2) ......................................................................................5

Fed. R. Civ. P. 12(b)(6) .................................................................................2, 8, 9

Fed. R. Civ. P. 12(c) ......................................................................................2, 8

Fed. R. Civ. P. 56 ...........................................................................................2

**PLAINTIFF ACQUISITION MANAGEMENT, INC.'S OPPOSITION TO DEFENDANT
RETREAVER, INC.'S MOTION TO DISMISS AND MOTION TO STRIKE**

Plaintiff Acquisition Management, Inc. (hereinafter "Acquisition" or "Plaintiff") hereby submits its Opposition to Defendant Retreaver, Inc.'s ("Retreaver" or "Defendant") Motion to Dismiss First Amended Complaint Pursuant to Fed. R. Civ. P. 12(B)(2) and 12(B)(6) and Motion to Strike.

## I.    INTRODUCTION

Acquisition is a Wyoming company, wherein Acquisition is in the business of providing phone call data analytics and tracking services to companies all over the world, including companies in California. Acquisition provides services under the RINGBA Mark, for which Acquisition owns and enjoys common law trademark rights, in addition to the rights conferred to it by virtue of U.S. Trademark Registration No. 5,452,036, throughout the United States.

On August 11, 2019, Acquisition personally served Retreaver, a Canadian company, with a Summons and Complaint for Trademark Infringement in the Central District of California. Shortly thereafter Retreaver "updated" its Terms of Service to remove choice of law and jurisdiction provisions referencing the United States. Then, Retreaver reached out to Acquisition to discuss the litigation. On August 27, 2019, Acquisition agreed to grant Retreaver what its Counsel requested: a Stipulation to Extend Time to Answer the Complaint. Acquisition prepared a Stipulation to that effect, and Retreaver responded by modifying the document to be a Stipulation to Extend Time to Respond to the Complaint, clearly intending to file these Motions.

On September 9, 2019, Retreaver raised the issue of Personal Jurisdiction and Fair Use of Acquisition's Trademarks in an email. After the Parties discussed the issues, Acquisition, hoping to avoid unnecessary motion practice, agreed to Amend the Complaint with evidence that supported Acquisition's position that the Central District of California has more than adequate Personal Jurisdiction over Retreaver.

Acquisition then reviewed recordings created by Retreaver's personnel that supported Personal Jurisdiction based on solicitation of business from contacts located within the State of California. Due to the defamatory nature of portions of

the recordings, Acquisition filed an Application to File Transcripts of the Recordings Under Seal, to which Retreaver objected, and the Court Denied the Request. Acquisition then proceeded to file the Transcripts of the recordings with no redactions as Exhibits to the First Amended Complaint. In response, Retreaver filed the pending Motion to Strike the Transcripts of the Recordings.

Despite Retreaver's pervasive contacts with the State of California, which directly gave rise to Acquisition's Claims for Relief set forth in the First Amended Complaint, Retreaver insists that the Central District of California has no Personal Jurisdiction over Retreaver. The facts beg to differ.

Additionally, Retreaver attempts to use Affirmative Defenses in Support of its Motions to Dismiss for Failure to State a Claim pursuant to Fed. R. Civ. P. 12(b)(6). This makes no sense because in order for an Affirmative Defense to apply at all, there must be a valid claim, and if that is the case, then Retreaver should instead file an Answer and Move for a Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) or Move for Summary Judgment pursuant to Fed. R. Civ. P. 56. It has done neither.

Acquisition respectfully requests that this Honorable Court exercise its Personal Jurisdiction over Acquisition and allow this case to move forward on the merits, without entertaining Retreaver's requests that only serve to delay this litigation or Strike relevant admissible evidence that is the basis of Acquisition's Claims for Relief.

## II.    RETREAVER'S CONTACTS WITH CALIFORNIA

### A.    Retreaver's Physical Address In California

In researching the proper jurisdiction for this litigation, Acquisition discovered a physical address in San Francisco, California that appears, on Google, to be an office maintained by Retreaver. *See* Decl. of A. Young, ¶2. In its Motion to Dismiss, Retreaver states that this San Francisco physical office was "listed on its corporate formation documents". Motion to Dismiss, p. 3 ln. 21-22. Retreaver does not state that this location is no longer listed on its corporate documents and offers little

justification as to why this address was selected and/or promoted online. Retreaver states that this was its financial advisor's address and it was used because Retreaver "had no physical office but operated out of the personal residences of its owners". Motion to Dismiss, p. 2 ln. 23. This then begs the question, if "Retreaver has its principal (and only) place of business in Toronto, Canada, where its four employees and business records are located", then why (and how) was a financial advisor's address in California used for corporate formation documents? Motion to Dismiss, p. 3 ln. 17-19. Presumably at least one of the four employees of Retreaver had an address at the time that would have been suitable for use on corporate formation documents. Retreaver is simply downplaying its extensive contacts with the State of California to prevent Acquisition from receiving any sort of relief for Retreaver's illegal actions.

## B.    Retreaver's Google Adwords Campaign Targeted California

Retreaver attempts to downplay the scope of its use of Acquisition's Trademarks in its Google Adwords campaign and the degree of its contacts within the State of California. Retreaver argues that it "did not target the advertisements at issue to California", supported by a self-serving declaration. However, the fact is that Google Adwords are capable of targeting specific geographic locations. *See* Decl. A. Young ¶3. Acquisition has shown that the Google Adwords campaign, indeed, reached California by showing that individuals physically located in California would search for RINGBA in Google and receive the Retreaver advertisements. Thus, it is clearly established that Retreaver's Google Adwords campaign, despite Retreaver's protestations to the contrary, targeted California.

## C.    Retreaver's Existing Contacts With California

Retreaver then leans into cherry picking specific statistics to make it appear as though Retreaver's contacts with California are minimal. "There are three kinds of lies: lies, damned lies, and statistics." Retreaver argues that it has "seven (7) customers - out of a total of 178 *worldwide* – in California" and "Retreaver's California revenue accounts for less than 2% of its revenue from its customers".

Motion to Dismiss P. 3, ln 5-6 (emphasis added). Retreaver then notes that "California is home to more than 12% of the U.S. population". Considering Retreaver argues that it has customers worldwide, it seems rational to compare California's population and Retreaver's revenue to the global population. California is home to about 0.5% of the population of Earth, Retreaver's stated market, yet Retreaver generates 2% of its revenue from California. Simply by flipping the statistics around, a completely different picture is presented. Indeed, receiving 2% of revenue from only 0.5% of the target market would tend to show that Retreaver's revenue generated in California is over representative, not under representative.

Thus, rather than trying to attach meaningless percentages to this case, it is probably best to stick to the facts. The facts are that Retreaver launched an online campaign, wherein Retreaver had the ability to target specific geographic locations, and that online campaign was targeted to individuals physically located in California.

### D.    Acquisition Made Knowingly Defamatory Statements To A California Contact

Acquisition was able to obtain a recorded demo, including audio, between Mr. Stan Pavlovsky of Retreaver and Mr. Oscar Maglio of HPJ Holdings. This recording was obtained by asking Mr. Maglio, who then sent the recording to Acquisition for use as Acquisition saw fit. *See* Decl. A. Young ¶4. Within this recorded demo, the involved parties consent to having the demo recorded, and firmly establish that Mr. Maglio is physically located in California at the time of the demo.

Mr. Maglio asks Mr. Pavlovsky "[i]s there any way you're able to record the demo and forward it to me" to which Mr Pavlovsky responds "Yeah. Absolutely … I can record it, and, yeah, that's fine." July 4 Transcript, p. 7, ln. 10-17. Mr. Maglio states his appointment time as "1:00 p.m. today, Pacific" and Mr. Pavlovsky confirms that Mr. Maglio is in California. July 4 Transcript, p. 6, ln. 4. Yet, Retreaver maintains that its Defamatory statements were not directed to California, and that this Honorable Court does not have Personal Jurisdiction over Retreaver.

On November 20, 2019, immediately after sending an email requesting a Meet and Confer to discuss the issues of Personal Jurisdiction, Counsel for Retreaver sent to Counsel for Acquisition a Rule 11 Violation Letter making the preposterous allegation, *inter alia*, that Mr. Maglio was actually Adam Young, an employee of Acquisition, surreptitiously recording the demo for malicious purposes. See Decl. M. Hankin ¶¶ 3-4. In fact, it was not Adam Young. *See* Decl. A. Young ¶5. Apparently, at some point between the sending the Rule 11 Letter and filing the present Motion to Dismiss, Retreaver determined that the best way to attempt to evade Personal Jurisdiction is to argue that a person that stated they were in California might not be in California, rather than argue that person was not who they said they were. Frankly, it is getting very difficult to keep track of which excuse Retreaver and its Counsel are using at which time, but rest assured, their basic position is either "we did nothing wrong" or " we may or may not have done anything wrong, but either way, Acquisition cannot possibly prove it, so this case should be thrown out".

Retreaver also claims that it obtained no new customers in California as a result of its Google Adwords campaign. Just because Retreaver's online campaign in California was allegedly unsuccessful does not mean that Retreaver did not spend time and money trying to benefit from the California Market – from which they derived four times as much business as there are people in their market. None of that affects this Honorable Court's ability to properly exercise Personal Jurisdiction over Retreaver for its illegal actions directed towards the State of California. Furthermore, Retreaver intentionally made knowingly false statements about Acquisition to an individual then present in California in an attempt to garner business from California.

## III.   RETREAVER'S ACTIONS IDENTIFIED HEREINABOVE ARE SUFFICIENT TO ESTABLISH SPECIFIC PERSONAL JURISDICTION

"When a defendant moves to dismiss for lack of personal jurisdiction [pursuant to Rule 12(b)(2)], the plaintiff bears the burden of demonstrating that the court has

jurisdiction." *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013). The court resolves all contested facts in plaintiff's favor, *Id.*, but a plaintiff cannot establish jurisdiction by alleging bare jurisdictionally-triggering facts without providing evidence of their existence; rather, the plaintiff is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citation omitted).

"Personal jurisdiction over a nonresident defendant is tested by a two-part analysis." *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994). "First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute." *Id.* "Second, the exercise of jurisdiction must comport with federal due process." *Id.* at 1404-05 (citation omitted). Because California's long-arm statute reaches as far as due process allows, see Cal. Code Civ. Proc. Section 410.10, the Court need consider only whether the exercise of jurisdiction comports with due process. Due process requires that nonresident defendants have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted).

Personal jurisdiction may be either general or specific. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8 & 9 (1984). "General jurisdiction exists when a defendant is domiciled in the forum state or his activities there are 'substantial' or 'continuous and systematic.'" *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (quoting *Helicopteros*, 466 U.S. 408 at 414-16). "Specific jurisdiction" exists where a claim arises directly from a defendant's contacts with the forum. *See AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

The Ninth Circuit applies a three-part test to determine whether specific jurisdiction exists:

(1) The non-resident defendant must purposefully direct his activities or

consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218 at 1228 (9th Cir. 2011). Acquisition "bears the burden of satisfying the first two prongs." *Id*. at 1228. If it does, "the burden then shifts to [Retreaver] to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id*.

Here, Retreaver purchased the Google Adword for RINGBA, an Acquisition Trademark, for Retreaver's online advertising campaign. That online advertising campaign was specifically directed toward California residents, as evidenced by the fact that a person physically located in California would be displayed the Retreaver advertisement when searching for RINGBA in Google. *See* Decl. A. Young ¶6. If, as Retreaver argues, it did not intend to direct its Google Adwords campaign to California, then it could have simply geographically limited its campaign to not include California. *See* Decl. A. Young ¶7. Retreaver did not do so, which is telling.

Further, Retreaver knowingly solicited an individual in California, thereby availing itself of the benefits of the laws of California. Retreaver conducted not one, but two demonstrations (of which Acquisition has bullet-proof evidence) with a person physically located in California. See Decl. A. Young ¶8. Acquisition is confident that, if granted adequate time to engage in thorough Discovery, Acquisition will discover far more instances in which Retreaver knowingly solicited California residents and utilized Defamatory tactics to try to garner California based business.

All of Acquisition's Claims in the First Amended Complaint arise directly from either Retreaver's Google Adwords campaign, which targeted California, or

1    Retreaver's attempt to solicit business from California including Defamatory tactics.

2    In either case, Retreaver has availed itself of the benefits of the laws of

3    California, and committed torts within the State of California, and therefore exercise

4    of Personal Jurisdiction over Retreaver by California courts is completely reasonable.

5    **IV.    RETREAVER'S USE OF ACQUISITION'S RINGBA TRADEMARK**

6    **SUFFICIENTLY CONSTITUTES A CLAIM UPON WHICH RELIEF**

7    **MAY BE GRANTED**

8    Retreaver argues that, pursuant to Federal Rule of Civil Procedure 12(b)(6),

9    Acquisition has failed to state a claim upon which relief can be granted with respect

10    to Claims 1-5 of the First Amended Complaint, which are related to Retreaver's

11    Trademark Infringement related actions.  In support of this argument, Retreaver goes

12    into great detail about the defense of "Nominative Fair Use", as established by *New*

13    *Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302 (9th Cir. 1992).

14    However, Retreaver's arguments miss the mark for two main reasons.

15    First, Nominative Fair Use is a defense to Trademark Infringement. *New Kids*

16    *on the Block v. News America Publishing, Inc.*, 971 F.2d 302 at 306, 309 (9th Cir.

17    1992).  In order to have a defense to something, there must be an underlying claim.

18    Thus, by arguing that the Nominative Fair Use Defense applies here, Retreaver has

19    implicitly admitted that Acquisition has stated a claim upon which relief may be

20    granted.  Retreaver attempts to slide in a Motion for Judgment on the Pleadings that

21    should be brought under Fed. R. Civ. P. 12(c) with the pending Motion to Dismiss

22    under Fed. R. Civ. P 12(b)(6).  This is simply inappropriate, and for this reason alone,

23    Acquisition's Motion to Dismiss Claims 1-5 of the First Amended Complaint under

24    Fed. R. Civ. P. 12(b)(6) should be denied.

25    Second, Retreaver's use of Acquisition's RINGBA Trademark in its

26    advertising is not the sole action that gives rise to Claims 1-5 of the First Amended

27    Complaint.  Importantly, the purchase of the Google Adwords campaign also gives

28    rise to Claims 1-5 of the First Amended Complaint.  Specifically, by purchasing the

Google Adword for RINGBA, Retreaver has caused a situation whereby individuals searching for RINGBA are presented with the Retreaver advertisement ahead of that which they are actually searching for.  This is different from simple Comparative Advertising or Nominative Fair Use.  This is actively causing individuals searching for RINGBA and Acquisition to instead be redirected to Retreaver.  Retreaver's arguments focus heavily on justifying the appropriateness of the advertisement itself, while virtually ignoring its purchase of the Google Adword for RINGBA.

Actively causing individuals searching for Acquisition to instead be redirected to Retreaver is Trademark Infringement, to which, the defense of Nominative Fair Use does not apply.

## V.    RETREAVER'S DEFAMATORY STATEMENTS SUFFICIENTLY CONSTITUTE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Retreaver further argues that Acquisition has failed to state a claim upon which relief may be granted with respect to Claim 6 of the First Amended Complaint for Defamation under Fed. R. Civ. P 12(b)(6). "The *sine qua non* of recovery for defamation" "is the existence of falsehood." *Old Dominion Branch No. 496 v. Austin*, 418 U.S. 264, 283 (1974).

Retreaver argues that some of the Defamatory statements made by Mr. Pavlovsky to Mr. Maglio were actually opinions and that to the extent these "opinions" are statements, that they are "substantially true". A "substantially true" statement may otherwise be known as a falsehood.

Thus, once again, Retreaver attempts to argue a Motion for Judgment on the Pleadings that should have been brought under Fed. R. Civ. P. 12(c) under the guise of a Motion to Dismiss for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).  Accordingly, Retreaver's Motion to Dismiss Claim 6 of the First Amended Complaint should be denied on this basis alone.

Should this procedural defect be insufficient to deny Retreaver's Motion to

Dismiss, it is Acquisition's position that the statements made by Retreaver are not simply opinions, and they are also false and harmful as explained hereinbelow.

### A.    Statements Regarding DNC Were False And Harmful

Mr. Pavlovsky stated that third-party DNC had contacted Acquisition and that DNC stated integrating with Acquisition's services would be a waste of time. *See* Motion to Dismiss, p. 6, ln. 12-15.   In actuality, DNC had never contacted Acquisition, and so, Mr. Pavlovsky's statement that they had done so was completely false. *See* Decl. A. Young ¶9.  This statement was clearly intended to discourage a potential customer from seeking out Acquisition's services using knowingly false information and implying that Acquisition's services were not of high enough quality.  This goes well beyond fair competition.  This is, in fact, defamation.

### B.    Acquisition's Website CallAnalyticsSoftware.com Does Not Have "Fake Reviews"

Mr. Pavlovsky stated that CallAnalyticsSoftware.com has "fake reviews" and is owned by Acquisition. *See* Motion to Dismiss, p. 7, ln. 9-13.   This is false, as this website does not provide reviews, but instead, identifies different competitors in the field and truthfully describes the features of the competitors. *See* Decl. A. Young ¶10. Acquisition notes that, based on collected data, a number of users of the website have gone on to visit Retreaver's website. *See* Decl. A. Young ¶11.

Retreaver argues in its Motion to Dismiss that Mr. Pavlovsky shared his *opinion* about Acquisition with Mr. Maglio, which was that Acquisition uses "unsavory tactics".  Saying Acquisition uses "unsavory tactics", however untrue, might constitute an opinion.  However, when Mr. Pavlovsky follows this alleged opinion with false information intended to discredit Acquisition, those statements are not an opinion.  Saying that someone is posting fake reviews online is not an opinion, it is a statement.  In this case, it is a blatantly false statement intended to deceive.

In the modern digital age, fake reviews are a serious concern and necessarily imbue a negative character onto those caught posting fake reviews online.

1    Retreaver's attempt to paint Acquisition as the source of fake reviews is clearly

2    intended to imbue onto Acquisition a negative character or reputation as deceitful.

3    **C.    Acquisition Was Never Banned From Retreaver And Never**

4    **Engaged In A "Racketeering Scheme"**

5    Mr. Pavlovsky states to a third-party that Acquisition was essentially running

6    a "racketeering scheme", complete with a description about how Acquisition would

7    infect people's computers with a virus that required these people to pay money to

8    Acquisition, and as a result Acquisition was banned from the Retreaver platform.

9    None of that ever happened.  That was all made up by Retreaver to steal business

10    away from Acquisition through Retreaver's pervasive campaign of defamation.

11    The first falsehood in that statement is that Acquisition ran any sort of

12    "racketeering scheme" as described by Mr. Pavlovsky. *See* Decl. A. Young ¶12. The

13    second falsehood in that statement is that Retreaver banned Acquisition.  It is

14    impossible that Retreaver banned Acquisition, largely because Acquisition was never

15    a customer of Retreaver. *See* Decl. A. Young ¶13.

16    Even now, Retreaver attempts to claim that "banning" is a form of

17    exaggeration, and therefore, an opinion.  Motion to Dismiss, p. 24, ln. 22-28.  The

18    word "banned" was used to describe what Retreaver allegedly did in response to non-

19    existent illicit actions.  Within the context, "banned" was used to say Retreaver

20    stopped offering its services to Acquisition.

21    This is textbook Defamation. Retreaver stated to a potential customer that

22    Acquisition engaged in illegal and unethical activities in an attempt to dissuade the

23    potential customer from looking into Acquisition's services, wherein Acquisition did

24    not engage in said illegal and unethical activities.

25    When pressed for an explanation as to what the basis for this statement is,

26    Retreaver argues that a minority shareholder of Acquisition engaged in these

27    activities separate from any of his activities with Acquisition, and therefore, it is

28    "substantially true".  Again, "substantially true" just means false.  Made up.  Lies.

1    Retreaver's arguments as to this portion conclude with a single statement, that
2    while technically true, is the equivalent of providing knowingly false hearsay.
3    Retreaver states "Acquisition further concedes that publicly-available sources
4    reported that it owned the website that downloaded "malware" onto visitors'
5    computers, just as Mr. Pavlovsky described."  Motion to Dismiss, p. 8, ln. 19-21.  As
6    soon as this was brought to Acquisition's attention, Acquisition had this information
7    corrected to reflect that it did not own the malware website, and this was known by
8    Retreaver at the time. Again, Retreaver knowingly presented false information to a
9    potential customer that imputed a negative character to Acquisition.  And one
10   technically true statement does not render harmless all of the untrue statements made
11   by Retreaver.

12   **D.    Acquisition Was Never Banned As A Result Of Any FTC**
13        **Complaint**

14        Mr. Pavlovsky states that an FTC Complaint prompted Retreaver to look into
15   Acquisition's calls, resulting in the banning of Acquisition from Retreaver.  Again,
16   Acquisition was never a customer of Retreaver, therefore could never be "banned".
17   Also, there is no FTC Complaint that involves Acquisition. *See* Decl. A. Young ¶14.

18        After Mr. Pavlovsky described Acquisition as running a racketeering scheme,
19   Mr. Maglio inquired as to how Retreaver discovered that Acquisition was engaging
20   in these activities, to which Mr. Pavlovsky replies "Well, there was an FTC
21   complaint".  While Mr. Pavlovsky did not utter the words "Acquisition was named
22   in an FTC complaint", the line of dialogue about Acquisition that concluded with the
23   statement "there was an FTC complaint" would be logically interpreted by any
24   reasonable person to mean that the FTC complaint involved Acquisition.  It did not!

25        Accordingly, Retreaver falsely told a prospective customer, one who was
26   considering Acquisition as a service provider, that Acquisition had committed or was
27   suspected of committing illegal acts.

28

### E.    California Civil Code Section 47(c) Does Not Create Any Qualified Privilege Here

Retreaver also threw in the argument that California Civil Code Section 47(c) renders the demonstrations a privileged communication, such that they cannot be used in civil court against it.  Retreaver completely misses the mark as to what this code section is for.  Apparently, Retreaver's Counsel saw that a predecessor of Cal. Civ. Code Section 47(c) had been used in some cases to protect defendants from Defamation related claims, and thought that they could hoodwink this Court here.

A relevant portion of the current Cal. Civ. Code Section 47(c) that is curiously absent from Retreavers's Motion to Dismiss is that it

"applies to and includes a communication concerning the job performance or qualifications of an applicant for employment, based upon credible evidence, made without malice, by a current or former employer of the applicant to, and upon request of, one whom the employer reasonably believes is a prospective employer of the applicant. This subdivision applies to and includes a complaint of sexual harassment by an employee, without malice, to an employer based upon credible evidence and communications between the employer and interested persons, without malice, regarding a complaint of sexual harassment. This subdivision authorizes a current or former employer, or the employer's agent, to answer, without malice, whether or not the employer would rehire a current or former employee and whether the decision to not rehire is based upon the employer's determination that the former employee engaged in sexual harassment. This subdivision shall not apply to a communication concerning the speech or activities of an applicant for employment if the speech or activities are constitutionally protected, or otherwise protected by Section 527.3 of the Code of Civil Procedure or any other provision of law."

Essentially, Cal. Civ. Code Section 47(c) is for the purpose of 1) allowing current or former employers of a job applicant to speak without malice to the applicant's prospective employer and 2) allowing an employee to bring sexual harassment concerns to their employer. Cal. Civ. Code Section 47(c) was most recently amended in January 2019.

This is important because Retreaver's "star case" is *Gantry Constr. Co. v. Am. Pipe & Constr. Co.*, 49 Cal. App. 3d 186 (1976), which references an older and different form of Cal. Civ. Code Section 47 that is no longer operative.

Accordingly, because the transcripts do not include a communication by a former employer or a sexual harassment claim made by an employee, the qualified privilege provided by Cal. Civ. Code Section 47 is not applicable here.

## VI.   ACQUISITION OBTAINED THE RECORDINGS OF THE DEMONSTRATIONS LEGALLY AND THE TRANSCRIPTS SHOULD NOT BE STRICKEN

In a last-ditch effort to prevent Acquisition from presenting the Defamatory statements made by Retreaver into evidence, Retreaver has filed a Motion to Strike Exhibits G and H of the First Amended Complaint ("the Transcripts"). Retreaver attempts to argue that the recordings used to prepare the Transcripts were obtained illegally pursuant to California Penal Code Section 632 and published illegally pursuant to California Penal Code Section 637.

This is especially curious because Acquisition did as much as it could to prevent the Transcripts from becoming part of the public record. First, Acquisition attempted to file its Original Complaint without including the transcripts at all. Retreaver then stated that this Honorable Court lacked Personal Jurisdiction.

In response, Acquisition compiled evidence that this Honorable Court did have Personal Jurisdiction, and even attempted to file its First Amended Complaint and Transcripts Under Seal. Retreaver objected to filing the Transcripts Under Seal, and Acquisition's attempt to file the Transcripts Under Seal was Denied by the Court.

Then, Acquisition filed its First Amended Complaint with the unredacted Transcripts, and Retreaver now Moves to Strike the Transcripts from the record and whines that Acquisition should never have published the Transcripts.

### A.  All Parties Consented To The Recordings Upon Which The Transcripts Are Based, Per California Penal Code Section 632

California Penal Code Section 632 requires that all parties to a telephonic communication grant consent before recording said telephonic communication. Here, consent of all parties was given freely and is included within the text of the transcripts themselves. In fact the recordings were created by Mr. Pavlovsky at the request of Mr. Maglio and then sent by Retreaver to Mr. Maglio.

On July 4, 2019, Mr. Maglio asks Mr. Pavlovsky "[i]s there any way you're able to record the demo and forward it to me" to which Mr Pavlovsky responds "Yeah. Absolutely … I can record it, and, yeah, that's fine." July 4 Transcript, p. 7, ln. 10-17.  Accordingly, not only did Retreaver consent to the recording, Retreaver even sent the recording to Mr. Maglio.

On July 11, 2019, Mr. Pavlovsky states "I'm now starting to record it … starting now, we're on record." July 11 transcript, p. 2, ln. 9-12.  Mr. Pavlovsky also sent this recording to Mr. Maglio.

Acquisition obtained the recordings by simply asking Mr. Maglio for them, after which Acquisition then had them transcribed.  *See* Decl. A. Young ¶15. Accordingly, Acquisition is not in violation of California Penal Code Section 632.

### B.  Mr. Maglio Consented To The Publication Of The Transcripts, Pursuant to California Penal Code Section 637

California Penal Code Section 637 requires that publication of a telephonic communication requires the consent of the person to whom the telephonic communication was directed.

Here, Mr. Maglio was the person to whom the telephonic communication was directed, and Mr. Maglio consented to its disclosure.  *See* Decl. A. Young ¶16.

1    Accordingly, Acquisition is not in violation of California Penal Code Section 637.

2    ### C.    Canadian Law Provides For One-Party Consent In Recordings

3    In addition to the fact that the creation of the Transcripts were in accordance

4    with California law, it is worth noting that Canadian law, where Mr. Pavlovsky was

5    located, requires only one-party consent. Canadian Criminal Code Section 182(2)(a).

6    This means that if either Mr. Pavlovsky or Mr. Maglio consented to the recording of

7    their conversation, that would then make the recording, and subsequent preparation

8    of the transcripts, lawful, if Canadian law were to apply instead of California law.

9    This is curious because part of Retreaver's Argument is that California has no

10    jurisdiction here, and presumably, California law would not apply.  In that case,

11    Canadian law completely vitiates Retreaver's arguments that the Transcripts would

12    be considered inadmissible.  Either way, Retreaver's attempts to keep the facts of its

13    Defamation from coming to light fail, and the arguments themselves are specious.

14    ## VII.    CONCLUSION

15    Acquisition respectfully requests that this Honorable Court exercise specific

16    Personal Jurisdiction over Retreaver, deny Retreaver's request to classify its

17    Defamatory statements as privileged, deny Retreaver's Motion to Strike the

18    Transcripts from the First Amended Complaint, and hold that Acquisition has stated

19    a claim upon which relief may be granted.

20    In the alternative, if the above facts are deemed insufficient to establish

21    Personal Jurisdiction, Acquisition respectfully requests that this Honorable Court

22    allow Acquisition to conduct limited Discovery about the issues at hand to confirm

23    that this Court does indeed have Personal Jurisdiction and that the Defamatory

24    statements were made to an actual prospective customer located within California.

25

26    Respectfully submitted,
       **HANKIN PATENT LAW, APC**

27    Dated: December 9, 2019    */Marc E. Hankin/*
       _____    Marc E. Hankin, Esq.
                                    Attorneys for Plaintiff,

28                                  **Acquisition Management, Inc.**

**PLAINTIFF ACQUISITION MANAGEMENT, INC.'S OPPOSITION TO DEFENDANT
RETREAVER, INC.'S MOTION TO DISMISS AND MOTION TO STRIKE**

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 12400 Wilshire Boulevard, Suite 1265, Los Angeles, CA  90025-1041.

On December 9, 2019, I caused to be served the foregoing **PLAINTIFF ACQUISITION MANAGEMENT, INC.'S OPPOSITION TO DEFENDANT RETREAVER, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(2) AND 12(B)(6) AND MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES** on Counsel for Plaintiffs by email as follows:

Nina D. Boyajian
Rebekah S. Guyon
**GREENBERG TRAURIG, LLP**
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
BoyajianN@gtlaw.com
GuyonR@gtlaw.com

___    (BY MAIL) The envelope was mailed with postage thereon fully prepaid U.S. Mail.  I am readily familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. Postal Service on that same day. I am aware that on motion of a party served, service is presumed invalid if the postal cancellation date is more than one day after date of deposit for mailing an affidavit.

XX    (BY EMAIL ONLY) I caused to be delivered the foregoing document to addressee listed above at his email address in lieu of personal service, in accordance with the written Stipulation of the Parties.

___    (BY PERSONAL SERVICE) I caused to be delivered the foregoing document to addressee listed above by messenger.

XX    (FEDERAL) I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Date:   December 9, 2019                    /Anooj Patel/
                                            Anooj Patel

**PLAINTIFF ACQUISITION MANAGEMENT, INC.'S OPPOSITION TO DEFENDANT
RETREAVER, INC.'S MOTION TO DISMISS AND MOTION TO STRIKE**